```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| AARON ALEXANDER, | : | CIVIL ACTION |
| | : | NO. 16-0546 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TUTOR PERINI CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    September 14, 2017

This personal injury action arises out of a construction accident that occurred on January 30, 2014, at the Chestnut Street Tower Project (the "Project") located at 30th and Chestnut Streets in Philadelphia, Pennsylvania. Defendant Tutor Perini Building Corporation ("TPBC"), the construction manager on the Project, subcontracted the concrete superstructure work to Carson Concrete Corporation ("Carson"). Plaintiff Aaron Alexander, an employee of Carson who worked on the Project as a concrete laborer, suffered injuries when he was struck from behind by pieces of concrete that unexpectedly shot out of a hose used to place concrete on site. He seeks to hold TPBC and its parent company, Tutor Perini Corporation ("Tutor Perini"), liable for these injuries on a theory of negligence.

Following discovery, Defendants together moved for summary judgment, and Plaintiff responded in opposition thereto. For the reasons that follow, the Court will grant summary judgment in favor of Defendants on all claims in this case.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a 30-year-old resident of Philadelphia, Pennsylvania, who has worked as a construction worker for various construction companies since 2008. See Aaron Alexander Dep. Tr. at 6:19-24; 9:22-11:19; 13:5-15:19; Defs.' Mot. Summ. J. Ex. A, ECF No. 26-3. At the time of the accident underlying this lawsuit, Plaintiff had been working for Carson as a concrete laborer for approximately one year. See id. at 9:22-10:3.

TPBC is a construction management company and a wholly-owned subsidiary of Tutor Perini, a publicly traded company.[1] See Rule 7.1 Disclosure Statement Form, ECF No. 2. TPBC was hired to manage the Project, which was the construction of a 34-story high-rise apartment building located on 30th Street between Chestnut and Walnut Streets in Philadelphia. See Jack Cooney Dep. Tr. at 13:13-22, Defs.' Mot. Summ. J. Ex. C, ECF No.

---

[1] Aside from being the parent company of TPBC, neither party has alleged that Tutor Perini played any role whatsoever in the Project.

26-5. This hire was made by Campus Crest at Philadelphia, GP ("Campus Crest"), which effectively owned the premises on which the Project was located (the "Premises").[2] See Constr. Mgmt. Servs. Agmt., Oct. 22, 2012, Defs.' Mot. Summ. J. Ex. D-1, ECF No. 26-6. In turn, TPBC entered into a subcontract agreement with Carson regarding the superstructure concrete work on the Project.[3] See Carson Subcontract, Defs.' Mot. Summ. J. Ex. E, ECF No. 26-8.

In conjunction with the Project, TPBC developed an environmental health and safety plan detailing the rules and procedures with which subcontractors and their employees were expected to comply. See Safety Plan, Defs.' Mot. Summ. J. Ex. G, ECF No. 26-10; see also John Schellenberg Dep. Tr. at 35:7-24; 37:10-18, Defs.' Mot. Summ. J. Ex. H, ECF No. 26-11. TPBC kept an office and a trailer on the premises of the Project in order to monitor the Project and enforce its safety procedures, and TPBC employees maintained a constant presence on site. See John Schellenberg Dep. Tr. at 92:11-20 (testifying that TPBC had an

---

[2] Campus Crest is not a party to this lawsuit.

[3] Carson is not a party to this lawsuit. Defendants sought leave to join Carson as a third-party defendant over three months after their deadline to do so had passed. The Court denied this motion for leave in an order dated July 29, 2016, on the basis that "Defendants have not shown good cause for their request for a nunc pro tunc expansion of the deadline set in the First Scheduling Order." ECF No. 16.

office on site at the Project); Jack Cooney Dep. Tr. at 26:9-13, 27:16-24 (testifying that at least one TPBC superintendent was on site at the Project every day).

On the morning of the accident, January 30, 2014, Plaintiff arrived on the premises of the Project around 7:00 a.m. and learned that he, along with a crew of four to six additional laborers, needed to determine the location of a concrete jam inside the pipes. See Aaron Alexander Dep. Tr. at 66:4-6. After disconnecting a series of pipes several floors below the location of the day's planned concrete pour, this crew identified two to four pipes in which the concrete had become "frozen" or "hard." Id. at 83:14-21; 85:4-18. The crew removed this concrete from the pipes, and Plaintiff thereafter returned to the upper floors to prepare for the pour--only to discover that more concrete had become jammed somewhere else in the pipes. Id. at 89:13-16; 91:5-8. Plaintiff and the rest of the crew began disassembling the pipes on the upper floors and found more of what Plaintiff described as "[f]rozen concrete, solid hard concrete in the top of the pipe." Id. at 94:4-7. While chipping this concrete out of the top of the pipe, Plaintiff was "hit from behind with concrete in the back of [his] leg and in [his] back." Id. at 95:14-21.

Plaintiff was then taken in a Carson work truck to the emergency room at Hahnemann Hospital. Id. at 113:1-7. He was

discharged after several hours without being administered any medication. Id. at 113:18-114:1. Plaintiff's medical records reflect a diagnosis of "[k]nee contusion and first degree burn to the buttocks."[4] Hahnemann Records, Defs.' Mot. Summ. J. Ex. L at 4, ECF No. 26-15.

Plaintiff initiated this action by filing a complaint in the Philadelphia County Court of Common Pleas on January 14, 2016. On February 3, 2016, Defendants timely removed the case to this Court on the basis of diversity jurisdiction. ECF No. 1. Defendants answered the complaint on February 4, 2016. ECF No. 3. Following discovery, Defendants moved for summary judgment, which Plaintiff opposed. ECF Nos. 26, 27. The motion is now ripe for disposition.

**II. LEGAL STANDARD**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a

---

[4] Plaintiff's medical records indicated that he could "Return to Work Without Restrictions As Of: 1/30/14," and more specifically that Plaintiff "may return to full duty in the morning given that this is a mild contusion without much in the way of physical findings." Id. at 2, 5. Nevertheless, Plaintiff did not return to work for Carson after the accident. See Aaron Alexander Dep. Tr. at 114:24-115:1.

genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation; a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In considering a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010). The moving party bears the initial burden of showing the absence of a genuine issue of material fact, but meeting this obligation shifts the burden to the nonmoving party, who then must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

**III. DISCUSSION**

Defendants argue at the outset that they are entitled to immunity under the Pennsylvania Workers' Compensation Act (the "Act"), which serves as the exclusive remedy in personal

6

injury lawsuits for both common law employers and employers statutorily defined under the Act. See 77 Pa. Stat. Ann. § 481(a). The Pennsylvania Supreme Court has established a five-part test for use in determining whether a general contractor is the "statutory employer" for purposes of determining immunity under the Act:

1) the general contractor must be under contract with an owner or one in the position of an owner;

2) the general contractor must occupy or control the premises of such owner;

3) the general contractor must enter into a subcontract;

4) the general contractor must entrust part of its regular business to such subcontractor; and

5) the injured party must be an employee of such subcontractor.

See McDonald v. Levinson Steel Co., 153 A. 424, 426 (Pa. 1930); see also Six L's Packing Co. v. Workers' Comp. App. Bd., 44 A.3d 1148, 1151 (citing five-part McDonald test).

A general contractor who meets the McDonald test is "entitled to its historic immunity as a 'statutory employer' from suit for common law negligence," even if the general contractor is not the common-law employer of the injured party. Fonner v. Shandon, Inc., 724 A.2d 903, 907 (Pa. 1999); see also Braun v. Target Corp., 983 A.2d 752, 764-65 (Pa. Super. Ct. 2009) ("The classic statutory employer situation is in the

construction industry, where a property owner hires the general contractor, who hires a subcontractor to do specialized work on the jobsite, and an employee of the subcontractor is injured in the course of his employment."). The remedial purpose motivating this immunity is "to ensure payment of workers' compensation benefits in the event of defaults by primarily liable subcontractors." Patton v. Worthington Assocs., Inc., 89 A.3d 643, 645 (Pa. 2014); see also Qualp v. James Stewart Co., 109 A. 780, 782 (Pa. 1920) ("The act intended to throw the burden on the man who secured the original contract from the owner to the end that employés of any degree doing work thereunder might always be protected in compensation claims.").

Defendant argues in its motion for summary judgment that "TPBC fulfills the five McDonald elements and, thus, is entitled to statutory employer immunity from Plaintiff's negligence claim." Defs.' Mem. Supporting Mot. Summ. J. at 23, ECF No. 26-1. Specifically, Defendants claim the following:

1) TPBC was under contract with Campus Crest, an entity in the position of the owner;[5]

2) TPBC occupied the premises;

3) TPBC and Carson entered into a subcontract;

---

[5] Defendants explain in a footnote the series of transactions that resulted in Campus Crest ultimately assuming "all of the rights and interest in the [p]remises as the original lessee." Defs.' Mem. Supporting Mot. Summ. J. at 4 n.1.

8

4) The concrete work subcontracted to Carson was entrusted to TPBC in the [Construction Management Services] Agreement;

5) Plaintiff was Carson's employee.

Id. at 23-27.

Plaintiff does not appear to dispute most of these claims. Instead, Plaintiff contests only the fourth McDonald requirement; Plaintiff disagrees that, by subcontracting the superstructure concrete work to Carson, TPBC entrusted part of its regular business to Carson. See Pl.'s Mem. Resp. Opp. Summ. J. at 3, ECF No. 27. Plaintiff argues, without citation, that "TPBC is in the business of that of a general contractor, not a concrete company," and "Plaintiff worked for a concrete company that has a very distinct different [sic] business than that of a general contractor." Id.

Importantly, Plaintiff does not dispute, as a factual matter, that TPBC entrusted the superstructure concrete work to Carson under the subcontract between those two entities. Rather, Plaintiff appears to be arguing that, as a legal matter, the concrete work entrusted to Carson was not part of TPBC's "regular business" under the McDonald test. This position misunderstands the Pennsylvania courts' approach to the regular business of a general contractor.

As courts within this district have explained, "the regular business requirement is satisfied 'wherever the

9

subcontracted work was an obligation assumed by a principle contractor under his contract with the owner.'" Al-Ameen v. Atlantic Roofing Corp., 151 F. Supp. 2d 604, 609 (E.D. Pa. 2001) (quoting Jamison v. Westinghouse Elec. Corp., 375 F.2d 465, 468 (3d Cir. 1967)); see also Scafidi v. Perini Corp., No. 89-7483, 1991 WL 30249, at *2 (E.D. Pa. Mar. 5, 1991) ("The plaintiffs' second argument is that the work being completed by [the subcontractor] was not part of the 'regular business' of Perini, as required by element four. Element four, however, does not require that the statutory employer be capable of carrying out that specific task itself, but only that the type of work be in the regular business of Perini."). This standard is bolstered by the rationale that "[i]f subcontracting construction work to specialist companies removed the general contractor from the ambit of the statutory employer doctrine, it would effectively eliminate the doctrine." Scafidi, 1991 WL 30249, at *2.

The record plainly reveals, and the parties do not dispute, that TPBC was responsible for the overall construction of the Project, including the concrete work. See Constr. Mgmt. Servs. Agmt. at § 5.6.1 (requiring TPBC to, among other things, "perform, or cause to be performed, the Work" with respect to the Project"); see also id. at § 17.21.60 (defining "Work" as "the construction identified by the Contract Documents, including all labor necessary to complete such construction, all

materials and equipment incorporated or to be incorporated in such construction and all services, facilities, tools and equipment necessary to complete such construction.").

Further, the record shows, and the parties do not dispute, that TPBC entrusted to Carson, as subcontractor, the obligation to perform the concrete work on the Project. See Carson Subcontract at § 2.1 (requiring Carson to "[c]omplete all SUPERSTRUCTURE CONCRETE WORK as required under the Contract Documents"). Under Pennsylvania law, the fact that TPBC itself did not perform the concrete work does not preclude a finding that TPBC was obligated to perform that work and that the work was part of TPBC's regular business. See Al-Ameen, 151 F. Supp. 2d at 609; Scafidi, 1991 WL 30249 at *2. The Court therefore finds that, at least for purposes of statutory employer analysis, TPBC entrusted Carson with part of its regular business.

Plaintiff does not dispute that the other four elements of the McDonald test are satisfied, and the Court finds support in the record for each. First, TPBC entered into an agreement--that is, the Construction Management Services Agreement--with Campus Crest, which was in the position of an owner of the premises. Second, TPBC occupied the premises by keeping an office on site, and further by having multiple employees on the premises every day. Third, TPBC entered into a

subcontract with Carson, pursuant to which TPBC delegated work to Carson. Finally, Plaintiff has admitted that he was an employee of Carson at the time of the accident underlying this litigation.

In light of the satisfaction of all five McDonald factors necessary to establish its status as a statutory employer, the Court concludes that TPBC is entitled to immunity under the Pennsylvania Workers' Compensation Act. Accordingly, Plaintiff's negligence claim against TPBC will be dismissed with prejudice.

The Court will also dismiss with prejudice Plaintiff's negligence claim against Tutor Perini upon finding that Plaintiff has effectively abandoned this claim. The record contains no evidence whatsoever regarding Tutor Perini's role in the Project or its liability for Plaintiff's injuries. Moreover, Plaintiff does not even address--let alone attempt to rebut--Defendants' argument that Tutor Perini cannot be held liable solely by virtue of its status as TPBC's corporate parent. Plaintiff's negligence claim against Tutor Perini therefore may be deemed abandoned. See Glenn v. Raymour & Flanigan, 832 F. Supp. 2d 539, 547 (E.D. Pa. 2011) (deeming the plaintiff to have abandoned certain claims by failing to address them in his response to the defendants' motion for summary judgment); Ankele v. Hambrick, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003) (finding

that the plaintiff "waived his opportunity to contest" an argument to which he "[made] no response.").[6]

**IV. CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment, dismiss both counts of Plaintiff's complaint, and enter judgment in favor of Defendants in this case. An appropriate order and judgment follow.

---

[6] Having dismissed Plaintiff's negligence claims against each Defendant on grounds of statutory immunity and abandonment, respectively, the Court need not reach any of the parties' other arguments in this case.

13